### McLAIN v. BIRD et al.

(Supreme Court, Special Term, New York County. January 28, 1910.)

1. ADVERSE POSSESSION (§ 88*)—PAYMENT OF TAXES—EFFECT AS ACT OF OWNERSHIP.

    Payment of taxes by a tax lessee in possession is not conclusive evidence of a claim of title, but it may be considered with other evidence bearing on the claim of title.

    [Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. § 509; Dec. Dig. § 88.*]

2. ADVERSE POSSESSION (§ 12*)—NECESSITY OF CLAIM OF TITLE.

    To base a title on adverse possession, the possession must be under a claim of title in fee.

    [Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 65, 66, 387–393; Dec. Dig. § 12.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. ADVERSE POSSESSION (§ 79*) — HOSTILE CHARACTER OF POSSESSION — POSSESSION UNDER TAX LEASE.

The statute of limitations will not run against the reversioner or his heirs while there is a valid tax lease outstanding.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. § 461; Dec. Dig. § 79.*]

4. ADVERSE POSSESSION (§ 42*) — BEGINNING OF ADVERSE POSSESSION — POSSESSION UNDER TAX LEASE.

A tax lessee may originate adverse possession during the running of his lease, but such possession will not ripen into a title until 20 years after the end of the term of the lease.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. § 210; Dec. Dig. § 42.*]

5. JUDGMENT (§ 877*)—PAYMENT—EVIDENCE.

Payment of a judgment within the time allowed for redemption from execution sale is not proved by an entry on the register of the attorney for the judgment creditor, showing the month, but not the year, in which the case was settled.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1646, 1647; Dec. Dig. § 877.*]

6. ESTOPPEL (§ 68*)—CLAIM IN JUDICIAL PROCEEDINGS.

A reversioner cannot challenge the validity of a tax lease after relying on it to avoid the running of the statute of limitations against him.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. § 165; Dec. Dig. § 68.*]

Action for a partition by Mary A. McLain against Ada Bird and others. Judgment for plaintiff.

G. A. Moses, for plaintiff.

Arthur H. Wadick, for defendant Ada Bird.

Charles W. Sinnot, for defendant Elizabeth Diller.

Merrill E. Gates, Jr. (James A. Hughes, of counsel), for defendants Robert E. Johnston and Elizabeth Johnston Hay.

Wm. J. Lippman, for defendant Sarah Emma Lindsay.

GIEGERICH, J. This is an action for the partition and sale of an unimproved parcel of land, situated in the borough of the Bronx, City of New York, and known as lot No. 335 on a certain map of the village of Wakefield, made in 1854 by one Henry B. Miller, and filed in the office of the register of the county of New York. There are three sets of claimants who assert title to the property. The plaintiff and the defendants Bird and Lindsay claim as the heirs at law of one George W. Morton, by virtue of a sheriff's deed to him on execution and sale made and recorded September 8, 1870. The defendants Robert E. Johnston and Elizabeth Johnston Hay claim as the heirs at law of John H. Johnston, M. D., in whom the title was in 1868. The sheriff's sale under which the Morton heirs claim was based upon a judgment against this Dr. Johnston. This deed the defendants Robert E. Johnston and Elizabeth Johnston Hay claim to be void for reasons which will be stated later. The third claimant, the defendant Elizabeth Diller, seeks to prove a title by adverse possession of herself and her grantor since 1881.

As this action was not brought until 1906, this last claim, if supported by the evidence, would dispose of the whole controversy. It will

---

therefore be considered first. To prove adverse possession Mrs. Diller relies upon the testimony of her grantor, one Alfred Newton Oakley, who in 1881 acquired title to some land adjoining that in suit, which was at that time a "commons," so called, not cultivated, nor even fenced in, by any one. Mr. Oakley's testimony fails to show any act on his part that can be construed as an assertion of title prior to 1883, or in fact any act of dominion or use of the land of any character. In that year he inclosed the land with a fence and started to cultivate it; but I am convinced that his occupation from that time until 1901, when he conveyed it to the defendant Mrs. Diller, was not under a claim to the title in fee, but was based upon some tax leases which in 1882 he purchased from the town of Eastchester, in the county of Westchester, N. Y. His inquiring both before and after he bought the tax leases as to who the owner was, and his refusal to give anything but a quitclaim deed to Mrs. Diller, indicate that he never made a claim of title in fee. No proof was offered that he made any open assertion of title. His inclosure and cultivation after he bought the tax lease was, of course, perfectly within his rights thereunder. The fact that he paid taxes for a number of years on this property is, it is true, competent evidence on the question as to what his claim of title was. Wiechers v. McCormick, 122 App. Div. 860, 865, 107 N. Y. Supp. 835. But that is all it is. It is by no means conclusive. It is merely to be taken into consideration, together with the other evidence bearing upon the claim of title. Its force in this case is very much weakened by the fact that it was necessary for Oakley to pay such taxes to preserve his possession under tax leases which he owned. In order to base a title upon adverse possession the possession must be under a claim of title in fee. Bedell v. Shaw, 59 N. Y. 46.

Neither will the statute of limitations run against the reversioner or his heirs while there is a valid tax lease outstanding, for the reason that they are not entitled to possession during such period. Sands v. Hughes, 53 N. Y. 287, 294. Therefore, since the possession of Oakley was under tax leases, and not under a claim of title in fee, it was not such an adverse possession as could ripen into title, nor was it a bar to this action. By this I do not mean to say that a tax lessee cannot originate adverse possession during the running of his lease. He may do so, but the adverse possession thus originated would not ripen into a title until 20 years after the end of the term of the lease. Sands v. Hughes, supra, at page 294. Manifestly, if any adverse possession was ever instituted during the tax lease here, it was not until 1901, when the property was conveyed to the defendant Diller and she went into possession, which date would not bar this action.

The defendants Robert E. Johnston and Elizabeth Johnston Hay claim that the sheriff's deed to Morton in 1870 is void and of no effect, because either between the date of the sale under execution and the giving of such deed, or within the time allowed for redemption, his ancestor, Dr. Johnston, against whom the execution was issued, paid the judgment. It was not proved that the payment was made within either of such periods. The only evidence on the point was an entry in the register of a Mr. Don A. Hulett, attorney for the judgment cred-

itor. Assuming that this entry is admissible for the purpose for which it was offered, and giving it the interpretation and effect as proof of payment of the judgment claimed for it, still it is fatally lacking in one respect. Although it shows the month, it does not show the year, in which the payment was made. After various entries under the year 1868, running from May to December, there appears the following, without any year:

"June 24th. Settled with defendant for $209.90, to include consideration to G. W. Morton for transfer to Johnston, as trustee, of the lands at Wakefield sold by the sheriff on execution herein against Johnston. Settled with Morton for his share by dividing amount received, less expenses, which expenses were $1 for stamps on deed, leaving to divide $208.90, making my share $104.45, and Morton's share $104.45. Delivered examination supplementary to execution to Johnston. Closed."

For aught that appears from this entry, it may be that the judgment was not paid until after the time for redemption had expired. Such subsequent payment would not have been at all improbable. The sale of the land had satisfied only a small portion of the judgment, and Dr. Johnston may have paid the balance, not to redeem the property, but to discharge his personal liability. Moreover, it appears from the entry that there was some kind of an understanding or expectation that there was to be the retransfer of the land by Morton to Johnston, as trustee. This, also, must have been a substantial inducement to Johnston to pay the judgment after the time for redemption had expired. What the nature or provisions of the contemplated trust may have been, or whether it ever took any definite form or reached the stage of an agreement between Morton and Johnston, or any one else, there is nothing to show.

This disposition of the claim of the Johnston heirs renders it necessary to consider the question whether the evidence is sufficient to establish the kinship of the defendants Robert E. Johnston and Elizabeth Johnston Hay. My conclusion is that the Johnston heirs have failed to prove the sheriff's deed void, and, since Mrs. Diller has failed to establish adverse possession, judgment must be for the holders of the paper title, namely, the Morton heirs.

The attorney for the defendant Ada Bird in his brief asks, in the event that the court takes the view that the possession of Oakley was that of a tax lessee, that the defendant Ada Bird be afforded an opportunity of showing that the tax leases are invalid. Such an opportunity should not be afforded for several reasons. In the first place, no excuse is given for failing to offer such evidence upon the trial; in the second place, when the tax leases were offered in evidence, no objection was made to their admission nor was any challenge made as to their validity; and, finally, when the case was submitted and argued, those opposed to the claims of the defendant Diller, including the attorney for the defendant Ada Bird, in order to avoid the effect of the statute of limitations, made the argument that, inasmuch as Oakley had gone into possession under these tax leases his possession was characterized by that fact as one of tenancy, and that the language of Sands v. Hughes, 53 N. Y. 287, 294, that "where there is a valid assessment or tax lease outstanding the statute of limitations will not during the term run against the reversioner or his heirs, for the reason that they are not

entitled to the possession until they are entitled to enter," was applicable.

Let a decision be presented for signature upon five days' notice of settlement.